UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
In Re:

      AMANDA E. WESSELDINE f/k/a     Chapter 13
      AMANDA E. CLARK f/k/a         Case No.: 09-62553
      AMANDA E. GACEK and
      DOUGLAS L. WESSELDINE,

                      *Debtors.*

------------------------------------------------------------

APPEARANCES:

HARRIS COURAGE & GRADY, PLLC    JESSICA G. GRADY, ESQ.
*Attorneys for Debtors*             LAURA HARRIS COURAGE, ESQ.
225 Greenfield Parkway, Suite 107
Liverpool, New York 13088

MARK W. SWIMELAR, ESQ.
*Chapter 13 Trustee*
250 South Clinton Street, Suite 203
Syracuse, New York 13202

Honorable Diane Davis, United States Bankruptcy Judge

### MEMORANDUM-DECISION AND ORDER

      Jessica G. Grady, Esq. ("Attorney Grady"), of the firm Harris Courage & Grady, PLLC

("Harris Law"), seeks a fee of $3,500.00 for representing Amanda and Douglas Wesseldine

("Debtors"), who filed a joint petition for Chapter 13 relief under Case No. 09-62553 on September

14, 2009.  This fee is for services rendered by Harris Law from the initial consultation through

confirmation of Debtors' Chapter 13 Plan ("Plan").  This Court established a presumptive or flat fee

pursuant to Administrative Order 09-07 ("AO 09-07"), effective for all Chapter 13 cases filed in the

Utica Division of the United States Bankruptcy Court for the Northern District of New York on or

after September 1, 2009.  Because Debtor's counsel carves certain services out of the flat fee, the

2

Chapter 13 Trustee has objected.[1]  The Court heard the Trustee's objection and took the matter under

advisement for a written decision on January 28, 2010.  Following consideration of the arguments

advanced by Laura Harris Courage, Esq. ("Attorney Harris Courage") and the record in this case,

the Court now renders the following findings of fact and conclusions of law pursuant to Federal Rule

of Bankruptcy Procedure 7052.

## JURISDICTION

This contested matter is a core proceeding that the Court may hear and determine under 28

U.S.C. § 157(b)(2)(A) and (O).  The Court has subject matter jurisdiction over the same pursuant

to 28 U.S.C. §§ 1334(a) and 157(a) and (b)(1).

## FACTS

Debtors are above-median income and have an applicable commitment period of five years.

At the time Debtors filed their Chapter 13 petition, they were current on their mortgage obligations.

Debtors value their principal residence on Schedule A, entitled "Real Property," at $92,000.00.

---

[1] The terms "presumptive fee" and "flat fee" are used interchangeably by bankruptcy courts
and practitioners alike to describe the judicially sanctioned standard fee that may be paid to debtor's
counsel without the necessity of a fee application.  Bankruptcy courts and practitioners oftentimes
also refer to this court-approved fee as a "no-look" fee.  Given the independent duty of bankruptcy
courts to evaluate compensation requested in all cases, which exists irrespective of the adoption of
a flat fee, the term "no-look" fee is a misnomer that will not be utilized by this Court.  *See In re
Smith*, 331 B.R. 622, 627-28 (Bankr. M.D. Pa. 2005) (noting that the court's duty to review fees
exists even in the absence of an objection from an interested party); *In re Rogers*, 401 B.R. 490, 492
(B.A.P. 10th Cir. 2009) (citing *In re Tahah*, 330 B.R. 780-81 (B.A.P. 10th Cir. 2005) (internal
citation omitted)).  In all cases, "[a]n attorney seeking approval of his or her fee has the burden to
establish the reasonableness of each dollar for each hour above zero." *Id.* at 493-94 (citing *Mares
v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986)).  "Courts which allow presumptive
fees have merely set a maximum allowable fee without the submission of a fee application." *Id.*
(citing *In re Yates*, 217 B.R. 296, 301 (Bankr. N.D. Olka. 1998) (noting that the presumptive fee sets
a maximum fee which will be allowed without the detailed records contemplated by Federal Rule
of Bankruptcy Procedure 2016, rather than a minimum fee to be awarded in all cases)).

3

With respect to Debtors' home, Debtors list on Schedule D, entitled "Creditors Holding Secured

Claims," a first mortgage held by Wells Fargo Home Fargo in the principal amount of $83,719.00,

a second mortgage held by Wells Fargo in the principal amount of $10,922.00, and a third mortgage

held by HSBC/RS in the principal amount of $35,289.00.  In addition to the mortgage debt, Debtors

list on Schedule D an auto loan held by Citizens Bank for a 2007 Toyota Camry in the principal

amount of $15,616.00 and a motorcycle loan held by Harley-Davidson Financial for a 1997 Harley-

Davidson Motorcycle in the principal amount of $1,560.00.  Debtors list on Schedule E, entitled

"Creditors Holding Unsecured Priority Claims," 2008 tax debt owed to the IRS in the amount of

$880.00 and 2007 and 2008 tax debt owed to New York State in the total amount of $1,800.00.

Finally, Debtors list on Schedule F, entitled "Creditors Holding Unsecured Nonpriority Claims,"

general unsecured debt in the total amount of $109,752.00.

Debtors' Plan, filed together with their petition on September 14, 2009, includes the

following provisions: (1) sixty monthly payments in the amount of $370.00; (2) payment in full of

all priority tax debt; (3) payment inside the Plan of attorneys' fees to Harris Law in the amount of

$2,306.00; (4) payment in full of the debt owed to Harley-Davidson Financial; (5) a 6% distribution

to general unsecured creditors; (6) payment of regular post-petition monthly payments outside the

Plan to Wells Fargo Home Fargo, Wells Fargo, and Citizens Bank; and (7) commencement of an

adversary proceeding to avoid the third mortgage on Debtors' residence held by HSBC/RS.

Pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), Harris

Law filed its required disclosure statement ("2016(b) Statement") indicating that counsel had agreed

to accept $3,500.00 for services rendered or to be rendered on behalf of Debtors through the date

of confirmation of Debtors' Plan.  The relevant portions of the 2016(b) Statement read:

4

5.     In return for the above-disclosed fee, I have agreed to render legal service[s] for all aspects of the bankruptcy case, including:

a.     Analysis of the debtor[s'] financial situation, and rendering advice to the debtor[s] in determining whether to file a petition in bankruptcy;

b.     Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c.     Representation of the debtor[s] at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

d.     ~~Representation of the debtor in adversary proceedings and other contested bankruptcy matters~~; [and]

e.     [Other provisions as needed][.]

6.     By agreement with the debtor(s), the above disclosed fee does not include the following services:

**All matters specifically not stated above.  Does not include any motions or adversaries, including, but not limited to Motions to Modify, Motions to Avoid, Adversaries (filing or answering), Answering Motions for Relief, Answering Motions to Dismiss, Applications or Motions to Incur Non-emergency Debt, Motions to Sell, Motions to Convert, Motions to Sever, [and] Motions to Redeem[.]**

(*See* Docket No. 1 (emphasis in original).)  On October 8, 2009, as required by AO 09-07,  Harris Law filed a fully executed document entitled *Rights and Responsibilities of Chapter 13 Debtors and their Attorneys* in Debtors' case.  ("Rights and Responsibilities Agreement," Docket No. 11.)  The Rights and Responsibilities Agreement states in relevant part: **"Approval for legal fees in the total sum of $3500.00 will be requested by the attorney. . . . Legal fees to be paid to the attorney shall be a 'flat fee' for all services to be rendered in this case.  Additional fees may be awarded and paid to the attorney if an extraordinary level of service is provided."**  (*Id.* (emphasis in original).)

Debtors' confirmation hearing was initially scheduled for November 19, 2009.  The Chapter 13 Trustee, who is the sole objector to confirmation of Debtors' Plan, filed his objection which is limited to the issue of attorneys' fees on November 12, 2009.  (Docket No. 13.)  By mutual agreement of the parties, the confirmation hearing was adjourned to December 17, 2009.  Debtors

filed their response to the Trustee's objection on December 16, 2009.  (Docket No. 15.)  The

confirmation hearing was again adjourned to January 28, 2010.  On that date, the Court heard oral

argument and thereafter considered the matter as having been fully submitted and ripe for

adjudication.

## ARGUMENTS

The Trustee takes issue with Harris Law's stated intent to commence an adversary

proceeding, which it explicitly excludes from the flat fee charged, to avoid the third mortgage on

Debtors' residence held by HSBC/RS.  The Trustee asserts that this relief can and should be

obtained by motion practice rather than an adversary proceeding, and thus should be included in the

flat fee.

In response to the Trustee's objection, Attorney Harris Courage makes several arguments

both in support of Harris Law's fee agreement with Debtors and in support of Harris Law's position

regarding Chapter 13 fee agreements generally.  While she does not explicitly ask that this case be

considered outside the purview of AO 09-07, she points out that Debtors and Harris Law "entered

into an agreement prior to the Court's new position regarding fees."[2]  Although Harris Law elected

to treat this case at the time of filing as a flat fee rather than hourly fee case, Attorney Harris

Courage argues that the firm's time records show more than twenty-six hours of services rendered

at an actual cost of $6,105.00, based on the lodestar method at hourly rates of $350.00 for attorneys

and $150.00 for paraprofessionals.  In order to further justify the amount of the fee charged in this

---

[2] The Honorable Stephen D. Gerling retired as Chief Judge of the United States Bankruptcy Court for the Northern District of New York on February 27, 2009.  The undersigned was appointed to the Northern District bankruptcy bench for the Utica Division effective March 6, 2009.  By "new position," the Court understands Attorney Harris Courage to mean that the Court's current stance on fees is different from that of the undersigned's predecessor.

6

specific case, Attorney Harris Courage emphasizes the controversial position, namely whether the third mortgage can be avoided by commencement of an adversary proceeding or whether it can be done on motion.

As to the firm's expertise, Attorney Harris Courage states that she has more than twenty-five years of experience in bankruptcy matters and that she is the only bankruptcy attorney practicing in the Utica and Syracuse Divisions of the United States Bankruptcy Court for the Northern District of New York who is certified by the American Board of Certification.  Further, she advises the Court that Harris Law is a high-volume debtor attorney law practice with an alleged high rate of success in Central New York.

In her own words, speaking to the dynamics of the attorney-client relationship between counsel and the typical Chapter 13 debtor, Attorney Harris Courage states: "We feel it is important that the client have an economic impact in the adversary or additional work which is above and beyond the basic Chapter 13 so that they use our resources wisely . . . ."  She posits a similar economic rationale for the firm's desire to charge additional fees for having to respond to a creditor's motion for relief from the automatic stay under 11 U.S.C. § 362(d), stating: "[T]his is important to help Debtors realize they must stay current on secured debt or it will cost them additional fees to retain the secured property."

Finally, taking aim at the flat fee approach generally, Attorney Harris Courage argues that "[b]ecause bankruptcy attorneys work primarily on a flat fee basis, they have a huge incentive to do as little as possible."  It is Attorney Harris Courage's position that the flat fee system is inherently flawed for the reason that it rewards attorneys who are mediocre and punishes those who provide exceptional service to help debtors successfully navigate the bankruptcy system.  In the same vein,

she argues that it unfairly shifts the financial burden to debtors with relatively simple cases because

they will be required to pay more or in effect overpay for services, while allowing debtors with more

difficult cases to pay less or in effect underpay for services. During Attorney Harris Courage's oral

argument in this matter held on January 28, 2010, she warned the Court that its flat fee was too low

to sustain debtor law practices and cautioned that it would inevitably lead certain members of the

debtor bar to stop filing Chapter 13 cases in the Utica Division.

## DISCUSSION

As noted *infra*, pursuant to 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure

2016(b), debtor's counsel is obligated to file a statement disclosing the amount of compensation paid

or to be paid for services rendered by such attorney in contemplation of or in connection with the

debtor's bankruptcy case. 11 U.S.C. § 329(a) (2006); FED. R. BANKR. P. 2016(b). Counsel's

2016(b) Statement is utilized by the Court to fulfill its duties under 11 U.S.C. §§ 329(b) and 330,

which confer upon the Court "the responsibility as well as the authority to determine the amount of

compensation that is reasonable for a debtor to pay for legal services rendered in a bankruptcy

proceeding." *In re Morrison*, 231 B.R. 754, 758 (Bankr. W.D. Mo. 1999) (citing *Carter v. Woods*

*(In re Carter)*, 433 F. Supp. 291, 293-94 (W.D. Mo. 1977)). In so doing, the Court must balance

several overarching competing considerations.[3] In addition, 11 U.S.C. § 330(a)(3) instructs the

---

[3]  The Honorable Paul W. Bonapfel, United States Bankruptcy Judge for the Northern
District of Georgia, recently articulated the factors that underlie this delicate balancing act as
follows:

> Bankruptcy courts have traditionally scrutinized professional compensation
> for several reasons. There is a concern for protecting the interest of a debtor in
> financially distressed circumstances from possible overreaching. There is the
> additional concern of protecting creditors since, in any case in which a debtor is
> paying less than 100% to unsecured creditors, the creditors are essentially paying the
> debtor's attorney's fees. Further, the Bankruptcy Code recognizes that there is an

Court as follows:

> In determining the amount of reasonable compensation to be awarded to . . . [a]
> professional person, the court shall consider the nature, the extent, and the value of
> such services, taking into account all relevant factors, including–
>> (A) the time spent on such services;
>> (B) the rates charged for such services;
>> (C) whether the services were necessary to the administration of, or
>> beneficial at the time at which the service was rendered toward the
>> completion of, a case under this title;
>> (D) whether the services were performed within a reasonable amount of time
>> commensurate with the complexity, importance, and nature of the problem,
>> issue, or task addressed;
>> (E) with respect to a professional person, whether the person is board
>> certified or has demonstrated skill and experience in the bankruptcy field;
>> and
>> (F) whether the compensation is reasonable based on the customary
>> compensation charged by comparably skilled practitioners in cases other than
>> cases under this title.

11 U.S.C. § 330(a)(3) (2006).  In a Chapter 13 case in which the debtor is an individual, the Court

is authorized to award reasonable compensation to the debtor's counsel based on consideration of

the above factors as well as the benefit and necessity of such services to the debtor.  11 U.S.C. §

330(a)(4)(B) (2006).

Consistent with 11 U.S.C. § 330, bankruptcy courts routinely set flat fees for debtor attorneys

providing customary legal services in Chapter 13 cases.  *In re Hueser*, 2009 Bankr. LEXIS 2548,

at *5 (Bankr. D. Ka. Aug. 31, 2009) (citing Keith M. Lundin, 4 CHAPTER 13 BANKRUPTCY, 3RD

---

> inherent public interest that must be considered in awarding fees.
>> At the same time, bankruptcy courts recognize the critical importance of
> debtors' attorneys to the system.  Thus, a reasonable fee must be one which protects
> the debtor, the estate, and creditors, while being generous enough to encourage
> lawyers and others to render the necessary and exacting services that bankruptcy
> cases often require.

*In re Dabney*, 417 B.R. 826, 829 (Bankr. N.D. Ga. 2009) (internal quotation marks and citations
omitted).

9

EDITION, § 294.1, pp. 294-27 - 294-42 (2000 & Supp. 2004); *In re Eliapo*, 468 F.3d 592, 598-99 (9th

Cir. 2006); *Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695 (9th Cir. B.A.P. 1998)).

This practice permits attorneys to be paid presumptively reasonable and standardized fees for

customary legal services without having to file a fee application.  *In re Smith*, 331 B.R. 622, 629

(Bankr. M.D. Pa. 2005).  Bankruptcy courts that set a flat fee for Chapter 13 cases harbor the

expectation that the amount of the fee will be sufficient to fairly compensate a skilled attorney for

rendering services routinely performed in a typical Chapter 13 case.  *Id.* at 630.

After careful consideration of the factors that govern the allowance of fees in bankruptcy

cases, this Court issued AO 09-07 on August 11, 2009, which provides for a flat fee that is the lesser

of $3,700.00, subject to adjustment at regular three year intervals, or 50% of the amount to be

funded through the Chapter 13 plan.  Practitioners may also elect under AO 09-07 to utilize the

traditional hourly fee arrangement, subject to their submission of regular fee applications and this

Court's approval of their fees charged.[4]  AO 09-07 is controlling in the matter *sub judice* because

the case was commenced after September 1, 2009.[5]

---

[4] It must also be noted that the Court arrived at and issued AO 09-07 after having reviewed a survey of Local Rules and practices related to debtors' attorneys' fees and services nationally as reported by the Standing Chapter 13 Trustees and compiled by the National Association of Chapter Thirteen Trustees ("NACTT").  In addition, the Court was able to draw upon the undersigned's fourteen year career as counsel to Chapter 13 Trustee Andrea E. Celli, and the undersigned's history as a longstanding member of the NACTT, in determining what constitutes an appropriate flat fee for Chapter 13 cases filed in the Utica Division.

[5] Attorney Harris Courage's argument that AO 09-07 should not apply to the instant case because Debtors retained Harris Law and approved the fee agreement in question prior to the Court's current stance on Chapter 13 fees is simply without merit.  Harris Law's time records show that the firm's initial consultation with Debtors took place on March 10, 2008.  AO 09-07 was signed on August 11, 2009, and immediately made available to practitioners on the Court's Web site.  Harris Law, therefore, had sufficient notice to amend its fee agreement with Debtors to comply with AO 09-07.  Moreover, Harris Law could have filed Debtors' case a minimum of two weeks earlier or

In setting the flat fee for cases filed in the Utica Division, this Court unequivocally addressed the standard services that attorneys are required to perform to earn the fee. Specifically, Administrative Order 09-07 states that the flat fee is contingent upon the attorney's provision of "all services rendered and to be rendered in connection with the case in accordance with the attachment to the Albany Division Administrative Order 08-01 titled *Rights and Responsibilities of Chapter 13 Debtors and their Attorneys*." Of particular importance to the instant matter are the enumerated responsibilities of counsel after the case is filed, including, but not limited to, preparation, filing, and service of motions to avoid liens and representation of the debtor in connection with motions for relief from stay. As noted *infra*, if an attorney believes that the flat fee will not be commensurate to the time and services required in a particular case, he or she may select the hourly fee option, subject to the Court's review and approval of fees charged.

This choice of fee arrangement by counsel upon acceptance of a new case begs the question as to what constitutes a typical Chapter 13 case. "Even if one starts with the premise that each [C]hapter 13 case is unique, it is fair to say that a great number of [C]hapter 13 cases share common or typical elements." *In re Dabney*, 417 B.R. at 834. Most Chapter 13 cases involve secured debt, such as a house and automobile, as well as other secured debt, including judgment liens or claims based on financing of other personal property. *Id.* It is common for Chapter 13 debtors, who may be facing foreclosure of their home, to have priority tax debt owed to federal, state, or local taxing authorities. *Id.* A Chapter 13 debtor's attorney must therefore anticipate time and effort to account

---

by August 31, 2009, to avoid having to comply with AO 09-07. Alternatively, Harris Law could have opted to file the case as an hourly fee case. This, however, would have required the Court's review of fees charged for reasonableness in light of the nature, extent, and value of such services at confirmation and for the balance of the Chapter 13 case.

for issues such as requests for stay relief, the determination of sufficient cure payments for mortgage arrears claims, adequate protection payments for secured creditors, applicable interest rates on secured claims, whether liens may be avoided, or whether cramdown is available. *Id.*

The Court's review of the record in this case and the nature of the work performed by Harris Law on Debtors' behalf reveal that this is in fact a typical Chapter 13 case. Debtors are above-median income, current on their secured obligations, and they have a minimal amount of priority tax debt. There are twenty-three claims filed in their case, all of which are consistent with the debts listed in their schedules. The proof of claim bar date for non-governmental entities expired on January 27, 2010, and general unsecured claims filed in the case total approximately $119,544.35. Debtors' case does not present any of the issues generated by the provisions of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"), including the applicability of the automatic stay, the rights of secured creditors, or the proper calculation of disposable income.

In fact, if at the time of filing, this case were to be evaluated as an hourly fee case, which in this Court's opinion should be reserved for truly complex Chapter 13 cases where the total fees generated will justifiably exceed the maximum flat fee of $3,700.00 allowed in the Utica Division, Harris Law likely would be awarded less than the fee of $3,500.00 charged for services rendered in this case only through the date of confirmation.[6] Review of counsel's time records show entries for

---

[6] In this case, based upon representations made by counsel and the facts as presented, there may be one or two motions required at best. While the Court agrees with Attorney Harris Courage's general position that adversary proceedings may be carved out of the flat fee, the Court would not award attorneys' fees for an adversary proceeding to avoid a creditor's allegedly wholly unsecured mortgage lien. This Court agrees with the underlying reasoning and decisions of the majority of bankruptcy courts that allow debtors to avoid junior liens via motion. *See, e.g., In re Robert*, 313 B.R. 545, 550 (Bankr. N.D.N.Y. 2004) ("[A] debtor moving to value collateral for purposes of stripping off an allegedly wholly unsecured lien under [11 U.S.C.] § 506 may do so by motion, unless the debtor seeks to otherwise contest the validity, extent, or priority of the lien."); *In re*

12

administrative matters, including multiple telephone calls to Debtors to change or confirm appointments, receipt of multiple facsimile transmissions, several telephone inquiries from creditors or creditor counsel to confirm the firm's receipt of the case and representation of the Debtors, and scanning of documents into Debtors' electronic case file.  In addition, the time records show duplication of review of Debtors' records by counsel and the paraprofessional staff, and other services.  Further, the Court notes that Attorneys Grady and Harris Courage both charge the same hourly rate of $350.00, notwithstanding their significant disparity in number of years of practice and level of experience.[7]

In addition and turning its attention to matters beyond the scope of this particular case, the Court must address Attorney Harris Courage's chief criticism of the flat fee arrangement, which is that it encourages or rewards attorneys for sub-par representation and the provision of minimum services.  The Court answers this criticism by reference to the professional and ethical obligations imposed by the New York Rules of Professional Conduct.  22 N.Y. COMP. CODES R. & REGS. tit. 22, §§ 1200.0-1200.59 (2010).  Pursuant to Rule 1.1(a), "[a] lawyer should provide competent representation to a client.   Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  *Id.* § 1200.1 (2010).

_____

*Dziendziel*, 295 B.R. 184, 188 (Bankr. W.D.N.Y. 2003) ("*Pond* valuation proceedings in the Rochester Division of the Western District of New York are authorized to be brought initially by motion (a "*Pond* Motion") under the Court's default procedures.").  As a general matter, the Court will not reward or condone the needless use of litigation via commencement of an adversary proceeding as a means of circumventing AO 09-07 to increase the maximum fee allowed in Chapter 13 cases.

[7] Although the Court raises this disparity in years of experience, it must be stated that the Court does not question Attorney Grady's competency or skills as a bankruptcy practitioner.  Her legal services may well be worth $350.00 an hour, which is a decision best left to the prospective client in the first instance.

13

Moreover, pursuant to Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client," "[a] lawyer shall not neglect a legal matter entrusted to the lawyer," and "[a] lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services . . . ." *Id.* § 1200.3 (2010).

An attorney who adopts a standard practice of charging the maximum flat fee allowed irrespective of the unique facts and circumstances of each case, yet consistently provides the bare minimum in the spectrum of services required by Chapter 13 cases, may find that he or she runs afoul of these ethical obligations, which carry with them the risk of discipline and sanctions pursuant to New York State's Rules of Professional Conduct as well as this Court's authority under 11 U.S.C. § 105. *See* 11 U.S.C. § 105(a) (2006). It should be inherent to the profession that members of the bar aspire to practice at the highest level, the reminder of discipline or disgorgement of fees should serve to encourage those who need additional motivation to raise their skill set and to provide the best level of professional service possible.

Notwithstanding the Court's decision in this case, there can be no question that debtors' attorneys play a pivotal role in the Chapter 13 bankruptcy process and have an important impact on case outcomes. Even before the enactment of BAPCPA, which has proven to further complicate the bankruptcy system, the benefits of attorney representation during the Chapter 13 process were studied and confirmed. *See Report on an Empirical Study of District Variations, and the Role of Judges, Trustees and Debtors' Attorneys in Chapter 13 Bankruptcy Cases*, 81 AM. BANKR. L.J. 431 (2007). Authors Scott F. Norberg and Nadja Schreiber Compo conducted what they described as "a multi-district study of the Chapter 13 system and the extent to which it has fulfilled two principal purposes - debtor fresh start and creditor repayment." *Id.* at 432. Of relevance here are their

findings, not surprisingly, that (1) debtors who were not represented by an attorney were much less likely to achieve a discharge, and (2) debtors represented by a higher-volume practitioner also were significantly less likely (but more likely than *pro se* debtors) to complete a plan and attain a discharge than debtors represented by a lower-volume practitioner. *Id.* at 433, 457-58, and 464.

The Court is cognizant of the fact that debtors' likelihood of success in the Chapter 13 arena is far greater if they are represented by counsel. To that end, the undersigned firmly believes that attorneys should be justly compensated for their services and not limited by a flat fee in complex or difficult cases. At the same time, debtors should not be overcharged in cases that lack the complexity or difficulty of others. *In re Dabney*, 417 B.R. at 831. Further, Debtors should be able to find beyond the courthouse doors a level of certainty regarding their future financial obligations, including attorneys' fees.[8]

This case presents an opportunity for the Court to reiterate that Administrative Order 09-07 is not designed to remove the discretion of the bar in establishing a reasonable fee depending on the complexity of a particular case. Attorneys are in the first instance in the best position to determine the complexity of each case, and they should endeavor to propose a flat fee that bears some relationship to the work that will likely be required and which inevitably depends on the unique facts and circumstance of each case. *Id.* Attorneys who consistently use the flat fee of $3,700.00 must

---

[8] This unfortunately does not hold true for Debtors in this case. The Court cannot reconcile Harris Law's 2016(b) Statement with the Rights and Responsibilities Agreement that Harris Law and Debtors signed and filed in this case. The 2016(b) Statement carves out all but the most basic legal services, while the Rights and Responsibilities Agreement states that the flat fee is "for all services to be rendered in this case." The flat fee arrangement, if used properly, should give much-needed certainty to the debtor, whose resources are limited, by assuring the debtor that he or she will not have to come out of pocket for additional work required in the case. *In re Dabney*, 417 B.R. at 831.

15

expect to occasionally encounter a case with unforseen complications, thus resulting in a lower

return than cases that proceed in a routine manner.  *In re Smith*, 331 B.R. at 630.  This is, however,

the exception rather than the rule.  Cases of increased complexity more often than not will be

identified prior to the filing of the petition, such that attorneys can opt to utilize the hourly fee

arrangement.  The Court trusts that attorneys will exercise their best business judgment and chose

the hourly fee option from the outset in a particular case if and when appropriate.

Here, Harris Law failed to abide by the flat fee parameters set by this Court and imposed by

AO 09-07.  The firm could have, but wisely did not, select the hourly fee option for Debtors' case.

Rather, Harris Law chose through this particular case, facts and circumstances that present, in this

Court's view, a straightforward, uncomplicated Chapter 13 case, to challenge the Court's recently

adopted position on Chapter 13 fees.  The Court concludes, however, based on the flat fees allowed

nationally,[9] and the amount of time counsel is required to spend during the administration of a

Chapter 13 case, that the maximum allowed flat fee of $3,700.00 in the Utica Division is entirely

justified.

---

[9] *See, e.g., In re Hueser*, 2009 Bankr. LEXIS 2548, at *5-6 nn. 9, & 12-13 (discussing post-BAPCPA flat fees for Chapter 13 consumer cases across multiple jurisdictions which ranged from $2,000.00 to $4,500.00); *In re Mayer*, 2006 Bankr. LEXIS 2671, at *9-10 n.8 (Bankr. D. Ka. Oct. 2, 2006) (noting other Tenth Circuit bankruptcy courts raised their flat fee post-BAPCPA to between $2,750.00 and $3,750.00); *In re Smith*, 331 B.R. at 630 (noting that the Court reviewed the policies adopted in other jurisdictions and found that pre-BAPCPA flat fees ranged from $1,600.00 to $2,500.00 for customary Chapter 13 cases).  *See also* Bankr. D. Vt. R. 2016-2(a) (2008) (adopting a maximum flat fee of $2,500.00 for Chapter 13 cases filed in Vermont); Bankr. D. Vt. R. 2016-1(g) (2008) (listing the duties to be performed by Chapter 13 counsel for the flat fee charged, including preparation and filing of lien avoidance motions and other post-confirmation services).

16

## CONCLUSION

For the reasons stated herein, it is hereby

ORDERED, that the Chapter 13 Trustee's objection to confirmation of Debtors' Plan is

sustained as to any request for attorneys' fees in excess of the $3,500.00 disclosed in Harris Law's

2016(b) Statement; and it is further

ORDERED, that the total fee awarded to Harris Law in this case is for all services required

to be performed by Chapter 13 counsel as enumerated in the Rights and Responsibilities Agreement,

including a motion to avoid the third mortgage lien, if appropriate; and it is further

ORDERED, that Harris Law file an amended 2016(b) Statement to reflect this decision

within fifteen days after entry of the decision on the case docket; and it is further

ORDERED, that Debtors' case be restored to the Court's confirmation calendar scheduled

for 10:00 a.m. on March 25, 2010, in Utica, New York.

IT IS SO ORDERED.

Dated at Utica, New York
this 8th day of March 2010


/s/ Diane Davis
DIANE DAVIS
United States Bankruptcy Judge